IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02241-NYW-CYC

WAYLON ROBITAILLE, and
MEGAN GARGES,

       Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,
JAMES, *Denver County Clerk and Recorder Marriage/Civil Union - 1*, and
NOEMI WINN, *Denver County Chief Deputy County Clerk and recorder,*

       Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Plaintiffs Waylon Robitaille, a Colorado Department of Corrections ("CDOC") inmate, and Megan Garges, a California resident, sought to marry. But defendants Noemi Winn and "James," each part of the Denver County Clerk and Recorder's office, denied their initial application for a marriage license due to a paperwork mismatch. The plaintiffs filed suit, asserting that this denial violated their right to marry. As public officials, though, Winn and James are entitled to qualified immunity, *see* ECF No. 29, which exempts them from suit unless clearly established law put them on notice that their actions were illegal. Because no such law exists, the Court recommends that the defendants' motion be granted in part and the plaintiff's claims against Winn and James in their individual capacities for money damages be dismissed with prejudice. The motion also seeks the dismissal of James in his official capacity, but the Court recommends that that part of the motion be denied for its lack of legal support.

## **BACKGROUND**

According to the complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on June 10, 2025, Garges attended a video conference with an employee of defendant City and County of Denver to seek a marriage certificate. ECF No. 5 at 5. That employee indicated that all of Garges's paperwork was in order. *Id*. But Robitaille, being incarcerated, was unable to join the video conference. *Id*. As a result, Garges had to schedule an in-person appointment with the Denver County Clerk and Recorder to obtain the marriage license, which she did, requiring adjustments to her existing travel plans. *Id*.

That appointment came some two weeks later with James. There, Garges presented the same documents she had used in the video conference: an absentee affidavit for marriage license, a letter of incarceration, a photocopy of Robitaille's CDOC photo identification card, and a power of attorney. *Id*. at 5, 7. After James initially reacted positively, he spoke to his supervisor, Winn, and reversed course: he could not issue the marriage certificate because while certain notarized documents contained Robitaille's middle name, the CDOC identification did not. *Id*. at 5. Garges retreated to her car and cried, *id*., though the story does not end there: ultimately, the plaintiffs did marry in February 2026. *See* ECF No. 42.

Before that, though, the plaintiffs filed this lawsuit on July 21, 2025. ECF No. 1. They assert two claims against the defendants. ECF No. 5 at 4. Both are premised on the same idea: the denial of the marriage certificate violated state law and violated their Fourteenth Amendment rights. *Id*. They seek injunctive relief and monetary damages. *Id*. at 12.

This motion followed, and the district judge referred it to the undersigned. ECF No. 30.

2

## ANALYSIS

The defendants move to dismiss the plaintiff's individual-capacity claims against James and Winn that seek money damages for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standard for evaluating those arguments is oft-repeated and well-known. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The ultimate duty of a reviewing court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The defendants add a layer to their motion to dismiss, asserting that qualified immunity applies. ECF No. 29 at 3–4. Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted).

To pass scrutiny under the first prong on a Rule 12(b)(6) motion, "the plaintiff[s] 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins*, 519 F.3d at 1249). For law to be "clearly established" under the second prong, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotation marks omitted). "To make this determination," a court "consider[s] either if courts have previously ruled that *materially similar conduct* was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with *obvious clarity* to *the specific conduct* at issue." *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1229 (10th Cir. 2025) (quotation marks omitted). "Usually, this requires either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Est. of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016) (quotation marks omitted).

Courts may address the prongs in any order, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a failure "to establish either prong of the two-pronged qualified-immunity

standard" means "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citations omitted). The second prong is dispositive here.

Each of the plaintiffs' claims is premised on the same theory: the clerks improperly denied them a marriage license. "[T]he right to marry is protected by the" Due Process Clause of the Fourteenth Amendment and "marriage is 'one of the vital personal rights essential to the orderly pursuit of happiness by free men.'" *Obergefell v. Hodges*, 576 U.S. 644, 664 (2015) (quoting *Loving v. Virginia*, 388 U.S. 1, 12 (1967)). While "[t]he right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration," *Turner v. Safley*, 482 U.S. 78, 95 (1987), government officials cannot "impermissibly burden[ ] the right to marry" by, for example, placing unreasonable restrictions on the right. *Id*. at 97–99. But the parties' focus here is not on a regulation restricting access to marriage licenses.

Instead, it rests on how James and Winn interpreted Colorado statutes governing those licenses. Colo. Rev. Stat. §§ 14-2-106 and § 14-2-109(2)(a) govern issuance of marriage licenses generally and for proxy marriages, respectively. The former requires the clerk to issue "a license to marry and a marriage certificate form upon being furnished" "satisfactory proof" that certain requirements are met. *Id*. § 14-2-106(1)(a). The latter permits "a marriage license for a proxy marriage" after the applicants provide certain required information, including "proper identification documents . . . for the absent party." Colo. Rev. Stat. § 14-2-109(2)(a). The plaintiffs do not take issue with the statutes themselves; rather, they maintain that James and Winn's interpretation of them requiring a match between the name on the CDOC identification and other documents violated their right to marry. ECF No. 5 at 5; *see* ECF No. 36 at 2.

But to overcome the qualified immunity defense, the plaintiffs "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing

5

that the defendant[s'] actions were clearly prohibited." *Est. of Reat*, 824 F.3d at 965 (quotation marks omitted). While they "need not identify 'a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate.'" *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (quoting *Mullenix*, 577 U.S. at 12). They "cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000) (quotation marks omitted).

They falter in that task. They point to "Ermold v. Davis, 2022 U.S. Dist." ECF No. 36 at 2. That, of course, is an incomplete citation. But when, as here, the plaintiffs proceed pro se, a court must construe their pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), though a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). So construed, it appears that the plaintiffs rely on *Ermold v. Davis*, Nos. 15-46-DLB-EBA, 15-62-DLB-EBA, 2022 WL 830606 (E.D. Ky. Mar. 18, 2022), *aff'd*, 2022 WL 4546726 (6th Cir. Sep. 29, 2022), to argue that the defendants' conduct here was beyond the pale. ECF No. 36 at 2.

That reliance is misplaced. That case is not "a Supreme Court or Tenth Circuit decision on point," nor does it show that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Est. of Reat*, 824 F.3d at 965 (quotation marks omitted). In all events, it is distinguishable: this is not a case in which a county clerk refused same-sex marriage licenses, ignoring Supreme Court precedent and attorney advice in the process. *Ermold*, 2022 WL 830606, at *2. In short, the plaintiffs offer no authority that

6

"establish[es] that the defendant[s'] actions were clearly prohibited," *Est. of Reat*, 824 F.3d at

965 (quotation marks omitted), such that "a reasonable official would understand that what he is

doing violates" the plaintiffs' rights. *Anderson*, 483 U.S. at 640. As a result, James and Winn are

entitled to qualified immunity on the individual-capacity claims against them seeking damages.

There is one more matter. The defendants ask the Court to dismiss James from the case

entirely, arguing that official-capacity claims against him serve no purpose since a more senior

official and the local government are already in the case. ECF No. 29 at 5. But they offer no legal

support for this argument in their motion and rely on facts not contained in the complaint. That

offers little guidance, and "[t]his court is neither required nor inclined either to consider

insubstantially briefed arguments, or to scour the record in support of evidence in support of" the

defendants' motion. *Cooper v. Shelter Gen. Ins. Co*., 653 F. Supp. 3d 873, 882 n.13 (D. Colo.

2023). It is not until the reply that the defendants offer any legal support, ECF No. 41 at 4–6, and

even that authority does not appear to distinguish line government employees and more senior

ones in the way the defendants posit. Because this request assumes unsubstantiated facts not

alleged in the complaint and fails to "be supported by a recitation of legal authority,"

D.C.COLO.LCivR 7.1(d), the motion's request to dismiss the official capacity claims against

James should be denied.

Dismissal of claims is a harsh remedy, and a pro se litigant's pleadings are to be

construed liberally. As a general rule, therefore, a court may give a pro se litigant the opportunity

to amend the complaint to cure a pleading defect. *Hall*, 935 F.2d at 1109–10; *Reynolds v.

Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, a court may dismiss a complaint

without an opportunity to amend if "it is patently obvious that the plaintiff could not prevail on

the facts alleged, and allowing him an opportunity to amend his complaint would be futile."

*Curly v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). Here, the Court's recommendation to dismiss the individual capacity claims asserted against defendants Winn and James seeking money damages is not due to a pleading deficiency. Rather, as a matter of law, the defendants are entitled to qualified immunity for lack of clearly established law. No amendment would remedy that. Accordingly, these claims should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that the defendants' Partial Motion to Dismiss, ECF No. 29, be **GRANTED in part** and **DENIED in part** and that the individual capacity claims asserted against defendants Noemi Winn and James seeking money damages be **DISMISSED with prejudice.**[1]

Respectfully submitted this 6th day of July, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>